IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2012

## ODELL SHELTON v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 08-02912      James C. Beasley, Jr., Judge

No. W2012-00617-CCA-R3-CO  - Filed November 8, 2012

Petitioner, Odell Shelton, seeks relief via a writ of error coram nobis from his plea agreement that resulted in a conviction of aggravated assault and a sentence of ten years. He claims that the trial court improperly sentenced him as a multiple (Range II) offender and erroneously relied upon a presentence report in denying his request for a suspended sentence. Petitioner asserts that the trial court's reliance on the presentence report is "newly discovered evidence." The coram nobis court summarily dismissed the petition. Discerning no basis for coram nobis relief, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Odell Shelton, Whiteville, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter, and Meredith DeVault, Senior Counsel, for the appellee, State of Tennessee.

**OPINION**

I. Procedural History

On April 29, 2008, a Shelby County grand jury indicted petitioner for two counts of aggravated assault. He entered a guilty plea on March 9, 2009, to one count of aggravated assault, and the trial court imposed the agreed-upon sentence of ten years as a Range II

offender at thirty-five percent release eligibility. The trial court denied petitioner's request for probation. As a factual basis for the plea, the State recited the following:

> Had this matter gone to trial[,] the [S]tate would have shown [that] on February the 1st of 2006, officers responded to a domestic violence disturbance call at 12012 Faxon, in Shelby County, Tennessee. Officers met with the victim, Ms. Crissie Sharp, who advised her boyfriend/suspect [ ] had assaulted her.

> She stated that her [sic] and her seven-year-old son were riding in the vehicle with Mr. Shelton, [and] he became angry. Mr. Shelton stopped the vehicle and started hitting the victim. The victim got out and ran[,] and the defendant picked up a brick from some yard, hit the victim with the brick[,] and also hit the victim with a piece of wood.

> The victim suffered cuts and a broken arm. She was transported to the Med.

On January 4, 2012,[1] petitioner filed a petition for writ of error coram nobis. The trial court summarily dismissed the petition on January 30, 2012.

## II. Analysis

### A. Standard of Review

The decision to grant or deny a petition for writ of error coram nobis on its merits is left to the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006) (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)). The writ of error coram nobis is an "extraordinary procedural remedy . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Our legislature has limited the relief available through the writ:

---

[1] Although the petition was date-stamped by the clerk's office on January 11, 2012, papers filed on behalf of a pro se petitioner incarcerated in a correctional facility are deemed filed on the date petitioner delivered to the appropriate individual at the correctional facility. *See* Sup. Ct. R. 28, § 2(G).

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (Supp. 2011). To demonstrate he is entitled to coram nobis relief, petitioner must clear several procedural hurdles.

First, the petition for writ of error coram nobis must relate: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 1995) (citing *State v. Hart*, 911 S.W.2d 371, 374-75 (Tenn. Crim. App. 1995)).

Next, a petition for writ of error coram nobis must generally be filed within one year after the judgment becomes final. Tenn. Code Ann. § 27-7-103 (2000). When a petition is filed outside of the statute of limitations, the coram nobis court must determine whether due process requires tolling. *Harris*, 301 S.W.3d at 145. In doing so, the "court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims." *Id.* (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). A court should utilize the following three-step analysis to balance the competing interests:

(1)     determine when the limitations period would normally have begun to run;

(2)     determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and

(3)     if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Id.* (quoting *Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995)).

## B. Petitioner's Claims

In sum, petitioner claims that the State failed to follow the mandates of Tennessee Code Annotated section 40-35-202(a) and Tennessee Rule of Criminal Procedure 12.3. He maintains that his increased offender status equated to an enhanced punishment for which the State should have filed a notice of intent and that the State either failed to give the requisite notice or the notice was inadequate. He also makes several assertions with regard to the trial court's reliance on the presentence report.

We apply the three-part test of *Harris* in reviewing this petition, which was filed outside of the one-year limitations period, to determine whether due process requires tolling of the statute of limitations. *See Harris*, 301 S.W.3d at 145. The first factor requires us to determine when the limitations period began to run. *Id.* Petitioner entered his guilty plea on March 9, 2009, and the trial court entered the judgment on March 30, 2009. Petitioner filed his petition for writ of error coram nobis on January 4, 2012, well after the expiration of the limitations period.

Our next inquiry is whether the grounds for relief actually arose after the limitations period commenced. *Id.* Petitioner claims error with respect to the guilty plea process. He claims that the State improperly enhanced his sentence without proper notice by asking the trial court to sentence him as a Range II offender. He claims that the trial court improperly relied on the presentence report. He further claims that he was not aware that the trial court would review a presentence report in determining his petition for a suspended sentence (probation).

At the plea hearing, the trial court informed petitioner:

> In indictment 08-02912, Odell Shelton, on your plea of guilty to aggravated assault, a class "C" felony, it is the judgment of the Court that you be confined for ten years, as a range two, multiple offender and that you pay the cost in the matter, for all of which mittimus and execution issue.
>
> I will delay execution until March 30[.] [W]e will have a hearing on that day to determine if you are eligible for probation. You need to make sure that you go the probation office and get interviewed so that I have a report for that day.

If you don't go get interviewed and I don't get a report, because you failed to go get interviewed, I am going to revoke your bond, do you understand?

Petitioner answered, "Yes, sir." The trial court emphasized, "That is your responsibility to get that taken care of. Do you understand?" Again, petitioner answered, "Yes, sir."

All of these claims were discovered or discoverable during or immediately after the March 2009 hearings. When petitioner entered his guilty plea, he knew he was being sentenced as a Range II offender and assented to that offender status. Petitioner signed the plea agreement offered by the State, which clearly classified him as a Range II offender. The trial court recited in open court that petitioner would be sentenced as a Range II offender. Any claim that the State failed to give proper notice of its intent to increase petitioner's offender status was known to petitioner on March 9, 2009, at the very latest. Nonetheless, he agreed to the range and signed the plea agreement.

Petitioner's claims with regard to the presentence report were also made known to him on March 9, 2009, when the trial court advised him that it would review a presentence report in determining petitioner's application for a suspended sentence and instructed him to report to the probation office to facilitate preparation of said report. Petitioner indicated at the plea hearing that he understood the judge's instruction. He cannot now claim that he was not aware that the trial court would utilize a presentence report. Any assertion that the trial court erroneously relied on a presentence report became viable on March 30, 2009, the date on which the trial court considered the presentence report in denying petitioner's application for probation. Thus, petitioner's claims are not "later-arising."

It is noteworthy that petitioner's first inquiry to the trial court and the district attorney general's office seeking records and transcripts was dated July 14, 2011, more than two years after he entered his guilty plea. He did not attempt to obtain supporting documentation for his petition for writ of error coram nobis until well after the limitations period had expired. Due process does not require tolling of the statute of limitations in this case.

## CONCLUSION

Following a thorough review of the record and the briefs of the parties, we discern no error and affirm the judgment of the coram nobis court.

_____
ROGER A. PAGE, JUDGE