IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2018

**STATE OF TENNESSEE v. MERRICO JACKSON**

**Appeal from the Criminal Court for Shelby County**
**No. 16-01195      James M. Lammey, Judge**

_____

**No. W2017-01782-CCA-R3-CD**

_____

The Defendant, Merrico Jackson, was convicted by a Shelby County Criminal Court jury of first degree premeditated murder and sentenced to life imprisonment. On appeal, the Defendant argues that the trial court erred in: (1) denying his request for a continuance; (2) failing to exclude a witness statement written on the back of a photograph array due to a discovery violation; (3) ruling that photographs of text messages and the call log from the Defendant's phone were properly authenticated; and (4) excluding testimony about alleged witness intimidation by the State. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Terrell L. Tooten, Cordova, Tennessee, (on appeal), and Cornelius Bostick, Memphis, Tennessee, (at trial), for the appellant, Merrico Jackson.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Glen Baity and Tyler Parks, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was indicted and convicted of the premeditated first degree murder of Marcus Griggs, the victim. In the light most favorable to the State, the proof at trial

showed that on the evening of January 25, 2016, the Defendant told Everett Boyce that the victim had robbed him of marijuana and money earlier that day, and the Defendant had some injuries that could have resulted from a robbery. The Defendant said to Mr. Boyce that, "I wanna get that n****r," and Mr. Boyce saw that the Defendant possessed a gun. The Defendant and Mr. Boyce were together for around an hour that evening before parting ways. Mr. Boyce walked to a nearby store and, as he was leaving, heard gunshots in the area. Later that night, the Defendant knocked on Mr. Boyce's door and asked if Mr. Boyce would hide him, but Mr. Boyce refused.

The proof additionally showed that the Defendant called Robert Blair on that same date. During their conversation, the Defendant told Mr. Blair that the victim had robbed him and that he was trying to secure a handgun so he could "handle this business." Mr. Blair was also present for part of the Defendant's conversation with Mr. Boyce and observed the Defendant with a gun at that time. At some point while the Defendant was talking to Mr. Blair and Mr. Boyce, he made a phone call during which he said, "Baby, I'm fixin' to kill this man, Baby." The evidence indicated that this phone call was to Kimberly Patterson, the Defendant's girlfriend. During the conversation, the Defendant said that the victim had robbed him and that "he's fixin' to kill [the victim] . . . tonight."

When the victim's girlfriend, Andrea Maxwell, returned home from work, she saw the victim lying face-down on the ground outside of their residence. The victim had been fatally shot one time. The bullet entered the victim's back and penetrated his heart and left lung before exiting through his chest.

## ANALYSIS

### I. Continuance

The Defendant argues that the trial court abused its discretion in denying his request for a continuance in order to obtain a mental evaluation.

The record shows that the trial was set for Monday, April 3, 2017, and the defense made a request for a continuance on Friday, March 31, 2017, asserting that a continuance was necessary in order to obtain a mental evaluation of the Defendant. Defense counsel explained that the Defendant was sexually assaulted as a juvenile but admitted that he did not "know if there's [sic] any psyche records or anything to that effect." The trial court observed that defense counsel had represented the Defendant for a year and noted that counsel would have already requested an evaluation had he seen any indication that one was needed. Accordingly, the trial court determined that the trial could fairly proceed as scheduled.

The granting of a continuance lies within the sound discretion of the trial court, and we will not reverse that decision absent a showing of an abuse of discretion and prejudice to the Defendant. State v. Schmeiderer, 319 S.W.3d 607, 617 (Tenn. 2010) (citing State v. Odom, 137 S.W.3d 572, 589 (Tenn. 2004)). "'An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted.'" Id. (quoting State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995)).

The trial court's denial of a continuance was a reasonable exercise of its discretion given the request was made on the eve of trial and there had been no prior indication that an evaluation was needed. Furthermore, there has been no showing that the trial court's decision deprived the Defendant of a fair trial or that the grant of a continuance would have led to a different result at trial. Although the Defendant's request was based on the necessity of a mental evaluation, the record on appeal contains no evidence suggesting that an evaluation would have resulted in a finding that the Defendant was incompetent or would have potentially negated a state of mind requirement. In fact, the State presented evidence at the motion for new trial hearing that when the Defendant was evaluated for competency in another proceeding, the evaluation revealed that he was competent and exaggerating any potential impairment. Therefore, the evidence supports the trial court's determination that a continuance was not necessary to ensure that the Defendant received a fair trial.

## II. Discovery Violation

The Defendant argues that the State violated the rules of discovery by not providing him with a statement of a defense witness, Kimberly Patterson.

The record shows that the defense called Ms. Patterson as a witness at trial. Under cross-examination by the State, Ms. Patterson was shown exhibit 79, a photograph array from which she identified the Defendant. On the back of the array, Ms. Patterson had written:

> [A]t 6:45 or 6:50 [the Defendant] stated that Twin (the deceased) robbed him and I responded where you at he said riding down Shelby Dr. He went to go get the pistol after that he came back to the apartments showed off the gun left my sight but did call and said that he finna kill [T]win tonight[.]

Defense counsel claimed that there was "a discovery breech" because he did not receive the statement. The State countered that it allowed open-file discovery and defense counsel reviewed the record. In response to the various assertions made by the

Defendant, the trial court allowed the evidence, ruling that: the "statement" was not Jencks material because the State did not call Ms. Patterson as a witness; the defense "had open-file discovery and apparently missed it"; and the statement was "on the piece of evidence that's [already] been marked into evidence as the photospread she saw."

"[Q]uestions concerning the admissibility of evidence rest within the sound discretion of the trial court" and will not be disturbed absent a showing of an abuse of discretion. See Pylant v. State, 263 S.W.3d 854, 870 (Tenn. 2008) (citations omitted). A trial court is found to have abused its discretion when it applies "an incorrect legal standard, or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).

Tennessee Rule of Criminal Procedure 16 provides in pertinent part:

Upon a defendant's request, the state shall permit the defendant to inspect and copy or photograph . . . documents . . . if the item is within the state's possession, custody, or control and . . . the item is material to preparing the defense; . . . the government intends to use the item in its case-in-chief at trial; or . . . the item was obtained from or belongs to the defendant.

Tenn. R. Crim. P. 16(a)(1)(F).

If a party fails to comply with the rules of discovery, the court may order that party to permit the discovery or inspection; grant a continuance; prohibit the party from introducing the undisclosed evidence; or order other relief as it deems just under the circumstances. Id. 16(d)(2). This court has previously determined that "evidence should not be excluded except when it is shown that a party is actually prejudiced by the failure to comply with the discovery order and that the prejudice cannot be otherwise eradicated." State v. Garland, 617 S.W.2d 176, 185 (Tenn. Crim. App. 1981).

The Defendant claims that, although the State gave him open-file discovery, he was not permitted to make copies of documents in violation of Tennessee Rule of Criminal Procedure 16, which prevented him from discovering Ms. Patterson's statement written on the back of the photograph array. The Defendant did not present this claim as a ground for relief in his motion for new trial, and therefore the issue is waived absent plain error.

In order for us to find plain error: (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the

accused did not waive the issue for tactical reasons; and (e) consideration of the error is "'necessary to do substantial justice.'" State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). "[T]he presence of all five factors must be established by the record before [we] will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established." Id. at 283.

We conclude that the Defendant is not entitled to relief under the plain error doctrine, as no clear and unequivocal rule of law has been breached. The record contains the State's response to the Defendant's request for discovery, which unambiguously indicates that defense counsel was given open-file discovery and the ability to "inspect and copy" documents relevant to his request. Although defense counsel alleged that he was not able to copy documents from the State's file, the trial court ruled that the State's open-file discovery policy was sufficient, implicitly accrediting the State's response that defense counsel would be permitted to copy documents. There is no plain error in this case.

### III. Photographs of Text Messages and Call Log

The Defendant argues that the trial court erred in ruling that photographs of his text messages and call log were properly authenticated and admitting them into evidence. As an aside, he also asserts that the photographs were hearsay.

The record shows that the State sought to introduce photographs taken of the Defendant's cellphone screen that depicted his text messages and call log. Prior to introduction of the photographs, the trial court held a hearing in which the State asserted that it would present the testimony of Detective Fausto Frias, who had seen the phone and would testify that the photographs accurately reflected what was displayed on the screen. The trial court ruled that the photographs were properly authenticated by the "officer who saw the screen," and also that "[i]t's obviously not hearsay. It's just . . . the evidence that was found at the scene." Thereafter, before introducing the photographs, the State elicited testimony from Detective Frias that the photographs depicted the same text messages and phone calls that the officer noted when he personally examined the phone.

"[T]he admissibility of photographs lies within the discretion of the trial court[.]" State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). However, "[b]efore a photograph is admissible, it must be verified and authenticated by a knowledgeable witness." State v. Davidson, 509 S.W.3d 156, 198 (Tenn. 2016) (quoting Banks, 564 S.W.2d at 949). The authentication requirement "is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims."

Tenn. R. Evid. 901(a). One permissible method of authentication is by a witness with knowledge. Id. at 901(b)(1).

We discern no abuse of discretion in the trial court's admitting the photographs into evidence. Detective Frias testified that he examined the Defendant's cellphone and that the photographs accurately and fairly depicted the messages and call log from the phone. This is sufficient to satisfy the authentication requirement by a witness with personal knowledge. Moreover, the photographs did not constitute hearsay as they were not offered to prove the truth of the matter asserted.

### IV. Witness Intimidation

The Defendant lastly argues that the trial court erred in excluding testimony about alleged witness intimidation by the State.

Everett Boyce testified as witness for the State at trial; however, the defense later sought to recall Mr. Boyce during its presentation of proof. The defense indicated that it wanted to question Mr. Boyce about something he claimed to have remembered the prior evening after he had testified. Defense counsel explained that Mr. Boyce had personally contacted him, claiming that he had additional testimony and that the State had tried to intimidate him into not giving the additional testimony. Defense counsel said that he therefore also wanted to elicit testimony from Mr. Boyce about his being intimidated by the State. The prosecutor asserted that they had not intimidated or threatened Mr. Boyce, explaining that they "were concerned that [Mr. Boyce] would come in and say something completely different, and it was [their] duty to warn him" that he would be charged with perjury if he gave testimony that contradicted his previous testimony. The prosecutor argued that it would be unfairly prejudicial and inflame the jury against the State to allow the line of questioning. The trial court agreed with the State and also ruled that the evidence was irrelevant.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. All relevant evidence, subject to certain exceptions, is generally admissible under Rule 402 of the Tennessee Rules of Evidence. Relevant evidence may be excluded, however, if "its probative value is substantially outweighed by the danger of unfair prejudice[.]" Tenn. R. Evid. 403. The admissibility of evidence is within the sound discretion of the trial court, and its decision will not be disturbed on appeal absent an abuse of discretion. See Pylant, 263 S.W.3d at 870.

We discern no abuse of discretion in the trial court's decision to disallow this line of questioning. The State was not engaging in witness intimidation by warning Mr. Boyce of the danger of committing perjury. Of note, the trial court was so concerned about the legal perils of Mr. Boyce giving a second round of testimony that it appointed an attorney to counsel Mr. Boyce about the decision. Characterizing a reasoned warning regarding perjury as witness intimidation could easily have unfairly prejudiced the jury against the State. Accordingly, the trial court's decision to exclude this testimony was a reasonable exercise of its discretion.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE